## THE AVON. THE LEONARD RICHARDS. THE EDON.

(Circuit Court of Appeals, Second Circuit. March 13, 1922.)

### Nos. 210, 211.

Collision ⟲⟹71(1)—Collision between anchored vessels held fault of last comer in giving the other a foul berth.

> A collision between anchored vessels *held*, on conflicting evidence, due to fault of the last to come in anchoring too close to the other, and not to the dragging of her anchor by the latter.

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by J. Langfeldt, master of the bark Edon, against the ship Avon. Charles A. McCullough, claimant, and the steam tug Leonard Richards, the Cahill Towing Line, Inc., claimant, with cross-libel by McCullough against the Edon. Decree for cross-libelant, and libelant appeals. Reversed.

Haight, Smith, Griffin & Deming, of New York City (John W. Griffin and W. Parker Sedgwick, both of New York City, of counsel), for appellant.

Bigham, Englar & Jones, of New York City (C. Andrade, Jr., of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. On February 15, 1918, the Edon, a full-rigged ship 270 feet long, anchored on the Red Hook Flats, where she remained until March 19, 1918, when a collision occurred between her and the ship Avon. On March 12, 1918, the Avon, a full-rigged ship fully laden, anchored between the Edon and the ship Three Marys on the Flats. The Edon remained at anchor during this period and was light. Both sides agree that the Avon did not change her position at any time after she dropped her anchor until after the collision. Liability was imposed upon the Edon below on the theory that she dragged her anchor and came in collision with the Avon. The position of the Avon when she dropped anchor is fixed beyond dispute. She was anchored to the northeast of the Edon. The exact place where the Edon anchored, however, is in dispute, and for the purpose of fixing responsibility for the collision it is essential to ascertain the point where the Edon was anchored and then to learn whether the Avon's anchorage was so near to that position that under suitable weather conditions collisions would result without dragging, or whether the Avon's anchorage was so far from the Edon that the collision could not have occurred without dragging. If the collision was due to giving the Avon a foul berth, then the Avon should be held at fault. If collision is due to the Edon's dragging her anchor, of course, responsibility should rest with the latter. The question is one of fact, for, after reaching a conclusion as to the fact, the law is plain that either ship would be responsible as the question of fact is determined. The testimony as given

⟲⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by the witnesses is very much in conflict. Nearly all the testimony was taken by deposition. Therefore the rule that this court will hesitate to reverse where testimony has been given in open court and an opportunity afforded the trial judge to see and hear the witnesses will not constrain us if, as here, we think the finding below was contrary to the evidence.

We think the case is one where the vessels were anchored too close together. They swung safely when they swung in unison, but were likely to collide when a favorable wind and tide therefor came together. The Edon's position was southwest of the Avon and was one in which the southwest and west winds would cause her to swing toward the Avon. This is supported by the testimony of the Edon's witnesses. On the other hand, the Avon's witnesses put the Edon in various positions. When the Edon swung up on the flood tide, her stern came within 50 or 100 feet of the buoy. If she swung to the east or northeast before a west or southwest wind, and if at the same time the Avon was drift-ing to the south or southwest on an ebb tie, the swing of the two vessels would intersect, and collision would probably result. The result of the happenings from March 12th to March 19th, we think, not only lends great weight to the claim of the Edon, not only as to her position, but satisfies us as to the cause of the collision.

In the oral and written argument advanced by the appellee, the Edon's original anchorage is not attempted to be placed with certainty. Liability has been imposed below upon the theory of the Edon's dragging, and it is argued from this that the original anchorage cannot be located. On the other hand, the appellant located the original anchorage with a degree of certainty which to us is worthy of acceptation. It is apparent that the anchorage ground was crowded during this period of the war. The Three Marys was two or three lengths east of the Edon, and the Avon crowded in between the two and dropped anchor at a place which apparently was too close to both of them. The master of the Three Marys, who was friendly to the first mate of the Avon, when called as a witness on behalf of the Avon, first tried to conceal that the Avon fouled his vessel, but finally admitted the fact. The mate of the Avon testified to the contact between his vessel and the Three Marys. The cause of this contact is stated by him to be due to the dragging of the Three Marys. The master of the Three Marys, however, denied that his vessel dragged or moved at any time. The crew of the Edon testified to some apprehension when the Avon anchored that she would collide with their vessel. The Avon's crew denied any such apprehension, but it does appear that there was some discussion after this among the members of the crew. One member of the crew called the attention of the mate to the close proximity of the Avon and the Three Marys, and the mate said that he was willing to take a chance and told him not to be afraid. In seeking a berth between two vessels, it would be the expected course for the master to place his vessel midway between them, and we are inclined to the belief that was done here. But the difficulty was the Avon was trying to get into a small space. On the Avon's evidence, the tide carried her stern about 50 feet or less of the buoy, and the Edon's witnesses de-

claring that, when she tailed upstream, she came within 50 or 100 feet of it. Occupying such an anchorage and position, the vessels would collide.

The position of the Edon was fixed by the bearings which the mate took of the buoy and of the Avon on March 19th, and we think this was her position, or at least a little south of it. Her witnesses describe this as that of her original anchorage. In addition to the unanimous and direct testimony of those on board the Edon that she did not drag, the tugboat master who anchored her and who observed her nearly every day said she did not drag, and no cause is set forth which would seem adequate to make her drag. She had her anchor embedded in the same spot for a month and had remained unmoved through the extraordinary storm of February 26th, when the wind blew over 80 miles an hour. Her hold on the ground was so secure that she had great difficulty in breaking the anchor out after she finally moved on March 20th to go to the repair docks. In order to account for the collision, there is no necessity to draw upon this reason of dragging. Nor do we think that entries on her log are helpful to the Avon. The Avon's first mate at first testified that the Edon dragged on March 14th and 15th, and that he would prove it by his log. He says his entry was made on this day—on the 14th. She was then dragging nearer his vessel, but the weather report shows that on the afternoon in question there was a wind velocity of 12 to 15 miles an hour on top of the Whitehall Building, perhaps 8 or 10 on the surface, and that this wind was from the northeast. Such a breeze would not cause a firmly anchored vessel to drag, and, since the Edon was southwest of the Avon, if she had dragged, it would have been in the wrong direction. It is testified on cross-examination that she was dragging partly across the river toward Brooklyn and about westerly. With a northeast wind, this is incredible. He later testified that she dragged on Friday, and that she was then closer than before. Finally he took back the statement that she dragged on the 14th (Thursday) and said it was on Friday, and then later stated that she did not drag on Friday. It was he who made the log entry. An entry was made on the 15th: "Strong westerly gale; ship Edon with foul anchors coming closer all the time." There was a strong wind on Friday, the 15th. It blew as high as 60 miles an hour, but the weather records show that after 3 a. m. it was from the northwest, and, if the Edon dragged on that day, she must have dragged to the southeast, which would have been away from the Avon, and not toward her. She could not have dragged nearer to her on Friday unless the Edon was anchored approximately northwest of the Avon, and this the Avon denied.

We think the log entries are not reliable. If the Edon was anchored southeast of the Avon, as some of her witnesses declare, when she dragged before a northwest wind, then, of course, she dragged further and further away from the Avon. There is some testimony that she dragged on Saturday, the 16th. It will be noted that on Saturday afternoon, the time when the dragging was said to have occurred, the tide was running ebb, and it is incredible that the March wind which prevailed, of 35 miles an hour, caused her to drag across and in part against the

tide. The log does not say she dragged on Saturday. The direction of the wind on Saturday as given in the log was west-northwest to northwest winds during the day, while the Weather Bureau records after 7 a. m. show that the wind was west and southwest. It may be, as claimed, that these entries in the log were made in connection with the mate's testimony. The fact that the Edon was nearer the Avon on Saturday is explainable for a better reason than dragging. That day the first there was a west or southwest wind. The Edon, being light, tailed it toward the Avon. The Avon being loaded, was less influenced by the wind and more by the tide and lay downstream. The vessels were nearer together during that afternoon. The loaded vessel was influenced by the ebb tide of the afternoon. Between 5 and 6 the direction of the wind shifted to southwest. These conditions, together with the gradual slackening of the ebb tide, made the light Edon drift more than the Avon and made for the positions found; namely, the stern of the Edon swung toward the Avon. We think this was due to the ebb tide and the west wind. The appellee's argument that the operation of clearing the Edon's anchor chains in some way caused her to drag is not sound. The anchor was an old-fashioned fluke anchor weighing about 38 hundredweight, and was an unusually large anchor on vessels of this size. It was a good bottom to drop into and was holding a light vessel. There was no severe weather on Saturday, the day mainly depended upon by the appellant as the day of the dragging, and no good reason is advanced to believe that the anchor did not hold.

The cause, when collisions occurred, may be found in conditions of the wind and tide. With the Edon light and the Avon loaded, the Edon was more affected by the wind and the Avon by the tide. When the vessels swung at different times, and in consequence, under particular combinations of wind and tide, the vessels would collide. This is borne out by the testimony of the witnesses. Whenever a southwest or west wind and an ebb tide and a wind velocity of 20 or more miles per hour occurred, the vessels came together. The first collision occurred on Saturday and Sunday, March 16th and 17th. On that night the wind shifted from the northwest to the west at about 8 o'clock Saturday morning and thence to the southwest at about 6 p. m. During the afternoon it was west for the first time in daylight hours since the vessels had lain there. It was on that afternoon that the Edon was seen nearer the Avon, and, when this was noticeable, the tide was ebb. During these conditions the Avon was tailing nearly downstream, and the Edon toward the east. This would bring the Edon's stern near the Avon's port side. The tide changed to flood in the late afternoon and the wind to the southwest. The Avon swung around so that she was tailing to the north while the Edon swung before the wind in a northeast direction. And if the Edon swung to the northeast to the full extent of her chain, her stern would be near the Avon's anchor, and if the Edon was further north than the position claimed for her, she would swing correspondingly closer. High water occurred at 11:16 p. m. and again it diminished in strength some time earlier. The wind at 9 p. m. was 20 miles an hour, at 10, 23, and at 11, 33, at the Weather Bureau Sta-

tion. The surface velocity would be about 14, 16, and 22 miles, and this would hardly affect a loaded ship. As the force of the flood tide slackened, the Avon would be drawn by her anchor chain to a point not far from her own anchor. She would be headed with her bow down stream, since she had tailed to the flood. The Edon would have her stern to the northeast before the wind. This would make the jib boom of the Avon not far distant from the stern of the Edon. It extends about 40 feet ahead of her bow, and it was in this position and in this way that the first collision occurred. At 1 a. m. on the 17th the tide was running ebb and the southwest wind blowing, and the vessels came into contact again in the same manner. The ebb tide was then running, and the Avon was actually drifting downward on the ebb, although she had not swung around, for she had not yet brought up on her anchor chain. And this is why the contact at 1 or 2 o'clock was more violent than at 11. The Avon continued to drift down bow first on the tide with her stern gradually swinging to the east, rubbing against the starboard side of the Edon, whose stern was still held by the wind in an easterly direction. It was then found that the Avon's port side and the Edon's starboard side were in contact. The vessels were in the act of swinging around toward Brooklyn, the wind having diminished and changed more to the west, and the tide being ebb. The bow of the Avon, swinging down broadside with the tide, pushed the Edon before her. On the morning of March 17th the wind died down, but increased before noon and blew 40 miles an hour from the southwest, and after 4 p. m. from the west. This extended the Edon's anchor chain to the northeast and east as far as it would go. The wind reached its maximum velocity between 4 and 5 on that afternoon, at which time the vessels came together again when the Avon swung down on the ebb tide. High water was just before noon and low water at 6 p. m. The Avon extended her anchor chain northeast or east, and this caused the Avon, when she swung down stream on the ebb tide, to cause her port side to come in contact with the Edon's stern. Thereafter, the Avon drifted away on the flood tide and there was no further contact. Before the ebb tide came again and between 11 p. m. and midnight, the wind shifted to the northwest and remained northwest until 3 p. m. on Monday, the 18th. The wind then changed to the southwest, but with a force of only 15 to 20 miles an hour, which was not sufficient to bring about a collision, even on the ebb tide. The wind freshened, however, about 10 p. m., but there was a flood tide, and the Avon was therefore tailing up the river.

Shortly after midnight the tide turned to ebb, the wind continuing southwest at a velocity of about 25 miles an hour. This brought about the combination of circumstances which had existed at the time of the previous collisions. At about 3:30 to 4 a. m. on the morning of Tuesday, March 19th, the Avon's port side again swung against the Edon's stern, and the stern of the Edon was pushed around by the Avon until it was pointing almost north. This time the vessels remained in contact about an hour. It appears that at about 2 a. m. on March 17th and at 6 p. m. March 18th, and 4 a. m. March 19th the conditions were about the same. On the first of these occasions the vessels collided,

while on the second they did not, and on the third they did. Under substantially the same conditions, with a stronger wind, on the afternoon of the 16th, the vessels came very close, but did not touch.

From the above it is a fact that at the same time, with like conditions, collisions occurred, while at other times they did not. On the occasions when they did not it is a fact that the vessels approached nearer to each other. That they collided on three occasions, and not on the other three, when they were under substantially like weather and tide conditions, was probably due to the variations in the conditions which are not subject of exact proof; and, because there was no collision on March 12th under like conditions, it cannot be argued that the vessels must have been further apart, and therefore there was dragging. It is testified to by some of the Avon's witnesses that the Edon had remained in the same position all the time up until Saturday morning, and the tugboat master who anchored the Avon, called as a witness by it, said that the Edon was anchored the same distance away she was when he anchored the Avon. Vessels will never swing a constant difference between them unless precisely the same conditions of wind and current prevail. Such identical conditions are rare.

The argument of the Avon that, since combinations of the southwest or west wind and ebb tide did not produce collisions on the night of the 12th prior to the alleged dragging, but did produce collision after it, and therefore that there must have been dragging, is answered by the fact that there were two occasions after the alleged dragging occurred when there was a combination of southwest or west wind with ebb tide and yet no collision occurred. These two occasions were on Saturday, March 16th, and the afternoon of Monday, the 18th. It is therefore not remarkable that there was one similar occasion for the alleged dragging when no collision occurred.

We think the cause of this collision must be founded upon the charge of the Avon giving the Edon a foul berth rather than inferentially establishing a dragging. Proof thereof depends largely on the conditions of the wind and tide. But such proof is compelling.

The decrees are reversed, and the appellant, J. Langfeldt, as master and bailee of the ship Edon, may have a decree against the ship Avon, and the libel of the appellee Charles A. McCullough, as managing owner of the ship Avon, will be dismissed.